MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
Telephone:    (510) 500-9994
Email:        hanni@mlf-llp.com

Attorneys for Ryan Montgomery

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | **Case No.:**  4:23-CR-00248-AMO-2 |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** |
| v. | |
| RYAN MONTGOMERY, | **Court:**  Courtroom 3, 3rd Floor |
| Defendant. | **Hearing Date:**  February 23, 2026 |
| | **Hearing Time:**  2:00 p.m. |

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*United States v. Montgomery*, 4:23-CR-00248-AMO-2

## INTRODUCTION

After a year of extensive negotiations, Mr. Montgomery entered into a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement with the government om November 17, 2025, pleading guilty to being an accessory after the fact and a felon in possession of a firearm, and agreeing to serve two years in the Bureau of Prisons ("BOP"). This agreement recognizes Mr. Montgomery's limited role, compared to his co-defendants, in the robbery that underlies this criminal prosecution while also holding him accountable for his mistakes. It also brings this criminal case to an end after almost two and a half years, a challenging experience for Mr. Montgomery, who had not had an active case in the criminal justice system for more than a decade.

Mr. Montgomery respectfully requests this Court adopt the joint recommendation of the parties and the probation office and sentence him to serve 24 months in the Bureau of Prisons ("BOP"). He also asks this Court to recommend the BOP house him as close to Northern California as possible.

## STATEMENT OF FACTS

### A.    Mr. Montgomery's upbringing.

Mr. Montgomery was born in Texas in 1988. PSR ¶ 71. He was adrift for much of his youth, living in Texas before moving to the South Bay Area, rotating between his mother and father's home. PSR ¶ 72. His parents argued frequently and his father was emotionally abusive, calling Mr. Montgomery a "dummy" and "stupid" when he struggled in school. PSR ¶ 73. When he turned 18, he left his father's home to live with his mother, and has only spoken with his father a few times in the close to two decades that have since passed. PSR ¶ 76. Without parental guidance, Mr. Montgomery found himself in the criminal justice system on non-violent crimes between the ages of 19 and 23, serving time in county jail. PSR ¶¶ 54-58. In 2012, Mr. Montgomery became a father. PSR ¶ 80. He was determined to be more present for his son than his father had been for him, and he stayed out of the criminal justice system. He focused on working to support himself and his son. PSR ¶¶ 80, 87.

### B.    The nature and circumstances of the offense and court proceedings.

As detailed in the plea agreement, Mr. Montgomery was at the Bishop Ranch Shopping Center in San Ramon on March 17, 2023, when the Heller jewelers there was robbed. PSR ¶ 13. Unlike his co-defendants, however, Mr. Montgomery was not present at the shopping center a week earlier when

Heller's was cased in anticipation of a robbery. PSR ¶ 12. Mr. Montgomery was at Bishop Ranch because one of his co-defendants, Kyle Vehikite, asked him for a ride. Following the robbery, Mr. Montgomery's car followed the path driven by the other cars involved in the robbery. PSR ¶¶ 15-18.

On July 21, 2023, a criminal complaint was filed charging Mr. Montgomery and the other co-defendants with Hobbs Act robbery conspiracy and robbery, both in violation of 18 U.S.C. § 1951(a). Dkt. 1. On July 26, 2023, law enforcement executed search warrants at the homes of all the co-defendants, including Mr. Montgomery's home. PSR ¶ 20. While items from the robbery were found in the co-defendants' homes, no items were found in Mr. Montgomery's home. A Rolex watch that had previously been stolen from a different jewelry store was found in Mr. Montgomery's home, but he had nothing to do with its theft, and had no idea it was stolen. PSR ¶ 20. A firearm and ammunition were also found in Mr. Montgomery's home. PSR ¶ 20. Mr. Montgomery was arrested and after a contested detention hearing, ordered released from custody on August 14, 2023. PSR ¶ 6.

On August 20, 2023, an indictment issued charging Mr. Montgomery and his co-defendants with conspiracy and robbery. PSR ¶ 1. Throughout 2024, Mr. Montgomery's co-defendants resolved their cases with plea agreements and in February 2025, all the co-defendants were sentenced to prison terms varying from 36 to 42 months in BOP custody. PSR ¶¶ 7-10.

Mr. Montgomery, however, declined to enter a plea agreement and eventually his case was set for jury trial. But throughout 2025, Mr. Montgomery was negotiating with the government to reach a resolution to the case that took into account his limited role in the offense. That finally occurred in November 2025, when the government filed a superseding information charging Mr. Montgomery with being an accessory after the fact to the robbery, in violation of 18 U.S.C. § 3, as well as for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). PSR ¶ 3. Mr. Montgomery entered his guilty plea on November 17, 2025, before any pretrial motions or other trial pleadings had been filed. PSR ¶¶ 4-5.

## SENTENCING ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate,

sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

All parties agree that a downward variance from the advisory Guideline range is appropriate here. Mr. Montgomery respectfully requests this Court adopt the joint sentencing recommendation in the Rule 11(c)(1)(C) plea agreement and sentence him to 24 months of custody.

**A.    Seriousness of the Offense, Respect for the Law and Just Punishment.**

The Supreme Court has explained the factors in § 3553(a)(2)(A)—the seriousness of the offense," the need "to promote respect for the law" and "provide just punishment for the offense"— are the sentencing rationale of "retribution." *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("a court may not take account of retribution (the first purpose listed in 3553(a)(2)) when imposing a term of supervised release") (emphasis omitted). "The goal of retribution" is the "interest[] in seeing that the offender is repaid for the hurt he caused." *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Yet, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

As noted by the Probation Office, a 24 month sentence would be the longest term of imprisonment Mr. Montgomery has ever served. PSR Sentencing Recommendation at 2. Moreover, a 24 month sentence also accounts for the "real conduct and circumstances" in this case, which include Mr. Montgomery's challenging upbringing and limited role in the offense compared to his co-defendants.

**B.**     <u>**Deterring Criminal Conduct and Protecting the Public.**</u>

A 24 month sentence will deter Mr. Montgomery from engaging in the conduct that brought him into federal court. As noted earlier, this will be the longest custodial sentence Mr. Montgomery will ever serve and he has clearly been deterred from involving himself with the wrong people and possessing a firearm.

As for protecting the public, getting Mr. Montgomery on supervised release and the watchful eye of the probation office sooner rather than later will be more effective at protecting the public than a prison sentence longer than 24 months.

**C.**     <u>**Providing Training, Medical Care or Other Treatment.**</u>

The "purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). Congress has cautioned courts to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Instead, Congress has directed district courts to consider "the most effective manner" to provide a defendant with "correctional treatment." 18 U.S.C. § 3553(a)(2)(D).

Mr. Montgomery has anxiety and depression, caused in part by having to deal with a federal criminal case over the last two and a half years. PSR ¶ 83. He has used marijuana for much of his life, but has largely refrained from using the drug while on pretrial release, and knows he will have to continue abstaining from it while on supervised release. PSR ¶ 85. Whatever treatment Mr. Montgomery needs will be best accomplished when he is out of custody. That is why "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (citing 18 U.S.C. § 3553(a)(2)(D)). Thus, placing Mr. Montgomery onto supervised release after 24 months of custody will be more effective at providing him with treatment than a longer prison sentence.

**D.**     <u>**The Guidelines Sentencing Range.**</u>

Mr. Montgomery agrees with the advisory U.S. Sentencing Guidelines range in the PSR, which matches the plea agreement, and which concludes the adjusted offense level is 22, Mr. Montgomery

is in criminal history category II, and the advisory Guideline range is 46-57 months. PSR ¶¶ 5, 51, 60, 93.

But the Supreme Court has made clear that the ranges recommended by the Sentencing Guidelines are neither mandatory nor presumptively reasonable. Instead, at sentencing courts have an "overarching duty" to "'impose a sentence sufficient, but not greater than necessary'" to comply with the sentencing factors in 18 U.S.C. § 3553(a). *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting § 3553(a)).

As the probation office notes, the Guidelines range fails to account for Mr. Montgomery's limited criminal history and the fact that this would be the longest sentence has ever served. PSR ¶ 116. Both the government and the Probation office recommend a downward variance from the advisory Guideline range and Mr. Montgomery joins that request and respectfully requests the Court adopt the joint recommendation of 24 months.

**E.    <u>Avoiding Unwarranted Sentencing Disparities.</u>**

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall,* 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

A 24 month sentence ensures Mr. Montgomery is not equated with his co-defendants, who were convicted of conspiracy and the underlying robbery. An accessory to a crime is different from a co-conspirator, because an accessory "does not participate in the commission of the primary offense" and "does not incur liability as a principal." *United States v. Graves*, 143 F.3d 1185, 1190 (9th Cir. 1998) (citations omitted). As a result, "the offense of accessory after the fact is considered a far less serious offense than the primary offense, and the accessory, who has not played a role in the actual commission of an offense, is considered far less culpable than one who has participated in the commission of the offense." *Id.* Thus, a 24 month sentence is appropriate here to distinguish Mr. Montgomery from the co-defendants.

### F.    __Providing Restitution.__

Mr. Montgomery contests the government's claim that he should pay restitution in the same amount of his co-defendants. But there is no need to decide this issue now because both parties agree this Court should defer restitution for 90 days.

The government bears the burden of proving a loss amount by a preponderance of the evidence. *United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013). Because the "goal of restitution…is to make the victim whole…any award is limited to the victim's actual losses." *Id.* (internal quotations and citations omitted). The restitution statutes "require[] some precision when calculating restitution. Speculation and rough justice are not permitted." *Id.* at 954. "Where the alleged loss is not quantifiable to any degree of certainty, the government's burden has not been satisfied, and no restitution should be ordered." *Id.* Moreover, a "district court may not order restitution such that victims will receive an amount greater than their actual losses." *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011). A court must look to "what actually happened, including whether the victim managed to recover some or all of the value it originally lost." *United States v. Innarelli*, 524 F.3d 286, 294 (1st Cir. 2008).

If a court believes restitution should be awarded, it has discretion to defer a decision on the amount to award for up to 90 days after sentencing if "the victim's losses are not ascertainable by the date that is 10 days prior to sentencing." 18 U.S.C. § 3664(d)(5). When a "sentencing court made clear prior to the deadline's expiration that it would order restitution," it can extend a decision on the "amount" of restitution "for more than 90 days." *Dolan v. United States*, 560 U.S. 605, 607 (2010).

Restitution should be deferred here and Mr. Montgomery provides a brief preview of some of the issues he anticipates will impact whether restitution should be ordered and, if so, how much restitution, if any, he should be ordered to pay.

### 1.    __The MVRA does not apply.__

"Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority." *United States v. Gossi*, 608 F.3d 574, 577 (9th Cir. 2010) (quotations and citations omitted). There are two primary criminal restitution statutes: the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act of

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*United States v. Montgomery*, 4:23-CR-00248-AMO-2

1997 ("MVRA"), 18 U.S.C. § 3663A. The statutes "are nearly identical and courts interpreting the MVRA may look to and rely on cases interpreting VWPA as precedent." *Gossi*, 608 F.3d at 577 n. 2.

There is one important difference between the MVRA and VWPA, however. "Restitution under the VWPA is discretionary, and the district court must consider a defendant's resources when deciding if restitution is appropriate." *United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003) (citing 18 U.S.C. § 3663(a)(1)(A), (B)). In contrast, the "MVRA eliminates district courts' discretion with respect to restitution for certain classes of crimes," and if "the MVRA applies, a restitution order is mandatory regardless of the defendant's ability to pay." *De La Fuente*, 353 F.3d at 769 (citing 18 U.S.C. § 3663A(a)(1)).

The "certain classes of crimes" covered by the MVRA include "a crime of violence" under 18 U.S.C. § 16, an "offense against property under this title," and other assorted offenses. 18 U.S.C. § 3663A(c)(1)(A). "In the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1)," the MVRA "shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement." 18 U.S.C. § 3663A(c)(2).

Neither of the offenses Mr. Montgomery was convicted of—accessory after the fact or felon in possession of a firearm—are offenses that trigger the MVRA. Most critically, neither are "crimes of violence" under 18 U.S.C. § 16. *See, e.g., United States v. Innie*, 7 F.3d 840, (9th Cir. 1993) ("being an accessory after the fact to murder for hire is not a crime of violence" under U.S. Sentencing Guidelines); *United States v. Twine*, 344 F.3d 987, 988 (9th Cir. 2003) (per curiam) ("we hold that 18 U.S.C. § 922(g)—felon in possession of a firearm—is not a crime of violence" for Bail Reform Act). Neither are offenses against property and Mr. Montgomery's plea agreement does not "specifically state[] that an offense listed under such paragraph gave rise to the plea agreement." 18 U.S.C. § 3663A(c)(2).

Thus, the MVRA does not apply. Even the unpublished memorandum cited by the government in its sentencing memorandum for the proposition that a person convicted of being an accessory after the fact is still liable to pay restitution, *United States v. Ward*, 862 F.2d 875 (9th Cir. 1988), involved a defendant ordered to pay restitution under the VWPA. *See* Dkt. 407, Gov. Sent. Memo at 7. So, any restitution the Court orders here must be made under the VWPA.

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*United States v. Montgomery*, 4:23-CR-00248-AMO-2

## 2. Because the VWPA applies, any restitution award must take Mr. Montgomery's financial circumstances into account.

Because the VWPA, not the MVRA, applies, "the district court must consider a defendant's resources when deciding if restitution is appropriate." *De La Fuente*, 353 F.3d at 769. More specifically, the Court must consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i)(II).

Here, Mr. Montgomery has limited financial means and assets. He supports his child financially and qualified for court appointed CJA counsel. The probation office does not recommend Mr. Montgomery pay a criminal fine because of his "negative monthly cashflow," "as well as his pending incarceration." PSR ¶ 90. Thus, Mr. Montgomery's financial situation means no restitution should be ordered.

## 3. Any restitution award must take Mr. Montgomery's specific culpability into account.

Regardless of whether the MVRA or VWPA applies, "restitution 'may be awarded only for losses for which the defendant's conduct was an actual *and* proximate cause.'" *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013) (quoting *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011) (emphasis in original)). These requirements are conjunctive, not disjunctive. That is, "'[b]ut for' cause is insufficient" to support a restitution award. *Swor*, 728 F.3d at 974. Instead, the "government must establish a causal connection between the defendant's offense and the harm to the victim." *Kennedy*, 643 F.3d at 1260. That means the government must "show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *Swor*, 728 F.3d at 974 (internal quotations and citation omitted). "[A]ny subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct" in order to trigger a restitution obligation. *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917 (9th Cir. 2001). "The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." *Id.*

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*United States v. Montgomery*, 4:23-CR-00248-AMO-2

8

In *Paroline v. United States*, 572 U.S. 434 (2014), the Supreme Court elaborated on the causation requirements in cases involving an "atypical causal process" where multiple factors cause a victim's loss. *Paroline*, 572 U.S. at 449. In such situations, a court "must assess as best it can from available evidence the significance of the *individual defendant's* conduct in light of the broader causal process that produced the victim's losses." 572 U.S. at 459 (emphasis added). Such analysis is necessary because "the central concern of the causal inquiry must be the conduct of the *particular defendant* from whom restitution is sought." *Id.* at 443 (emphasis added); *see also id.* at 455 (noting "the bedrock principle that restitution should reflect the consequences of the defendant's own conduct"). An individual defendant cannot be "liable for an amount drastically out of proportion to his own individual causal relation to the victim's losses." *Id.* at 461.

Here, this Court cannot just simply make Mr. Montgomery responsible for restitution in the same amount of his co-defendants because that would fail to take his individual conduct into account. As noted earlier, an accessory "does not participate in the commission of the primary offense" and "does not incur liability as a principal." *Graves*, 143 F.3d at 1190. As a result, "the offense of accessory after the fact is considered a far less serious offense than the primary offense, and the accessory, who has not played a role in the actual commission of an offense, is considered far less culpable than one who has participated in the commission of the offense." *Id.*

Thus, this Court will have to determine what amount of loss, if any, was caused by Mr. Montgomery's specific conduct given his limited role and culpability, as even recognized by the government.[1] Mr. Montgomery maintains his limited role in the offense should lead the Court to order him to pay no restitution at all.

**4.    If the Court orders restitution, it should waive interest.**

Finally, regardless of when the restitution hearing occurs and how much restitution, if any, is ordered, if the Court decides to order restitution, Mr. Montgomery requests this Court exercise its discretion and waive interest on any restitution ordered. *See* 18 U.S.C. § 3612(f)(3)(A) (court may

---

[1] It bears noting the unpublished Ninth Circuit memorandum cited by the government in support of its request for restitution, *Ward*, was decided long before the Supreme Court issued its landmark decision in *Paroline*.

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*United States v. Montgomery*, 4:23-CR-00248-AMO-2

waive interest if it "determines that the defendant does not have the ability to pay interest"). "Indigency is a necessary…condition to waiver" of interest on restitution. *United States v. Spencer Tnd Dang*, 492 Fed. Appx. 730, 731 (9th Cir. 2012) (unpublished). Again, the probation office does not recommend a fine because of Mr. Montgomery's "negative monthly cashflow," "the likely need to pay restitution, as well as his pending incarceration." PSR ¶ 90. For the same reasons, interest on any restitution should be waived.

## G.    Mr. Montgomery should be permitted to self-surrender.

Mr. Montgomery requests the Court permit him to self-surrender to the BOP. The PSR recommends self-surrender, noting Mr. Montgomery's release is not restricted under 18 U.S.C. § 3143, and he "has kept all court appearances, generally complied with conditions of pretrial release, and is not viewed as a flight risk or a danger to the community." PSR Sentencing Rec. at 3. The government has indicated it has no objection to Mr. Montgomery being permitted to self-surrender. Thus, Mr. Montgomery respectfully requests the Court permit him to self-surrender to the BOP.

## CONCLUSION

Mr. Montgomery respectfully requests this Court follow the joint recommendation of the parties and probation office and impose a 24 month sentence, permit him to self-surrender to the BOP and recommend the BOP house him in a facility as close to Northern California as possible. He also asks this Court to order no restitution and, at a minimum, defer restitution for 90 days. If the Court orders restitution, it requests the Court waive interest on restitution due to Mr. Montgomery's inability to pay.

Dated:    February 17, 2026                    Respectfully submitted,

MOEEL LAH FAKHOURY LLP

Hanni M. Fakhoury
Attorneys for Ryan Montgomery

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*United States v. Montgomery*, 4:23-CR-00248-AMO-2

10